**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

---

| | | |
|---|---|---|
| **SHANTE MILBURN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. WGC-15-1740** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

---

### MEMORANDUM OPINION

Plaintiff Shante Milburn ("Ms. Milburn" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383f. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition. *See* ECF Nos. 2, 6.[1] Pending and ready for resolution are Plaintiff's Motion for Summary Judgment (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 14). No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons set forth below, Plaintiff's Motion for Summary Judgment will be denied, but her alternative request for a remand will be granted. Defendant's Motion for Summary Judgment will be denied.

---

[1] The case was subsequently reassigned to the undersigned.

1.  **Background**.

On February 22, 2012[2] Ms. Milburn protectively filed applications for DIB[3] and SSI alleging a disability onset date of January 1, 2011 due to a spine injury, lumbar post fusion syndrome, peroneal motor neuropathy, fibromyalgia, migraines and depression.  R. at 9, 67, 77, 88, 99, 170-79, 180-83.  Ms. Milburn's applications were initially denied on June 5, 2012.  R. at 116-19, 120-23.  Ms. Milburn requested reconsideration and on December 11, 2012, the applications were denied again.  R. at 124-25, 126-27.  The Social Security Administration acknowledged receiving Ms. Milburn's request for a hearing before an Administrative Law Judge ("ALJ") on February 4, 2013.  R. at 128-29, 130-31.  On February 11, 2014 an ALJ convened a hearing via video teleconference.  R. at 26-44.  Ms. Milburn was represented by counsel.  During the hearing the ALJ obtained testimony from Ms. Milburn and a vocational expert ("VE").  In the February 20, 2014 decision the ALJ found Ms. Milburn has not been under a disability as defined in the Social Security Act, from January 1, 2011[4] through the date of the decision.  R. at 20.  On March 6, 2014 Ms. Milburn requested a review of the hearing decision. R. at 5.  On April 13, 2015 the Appeals Council denied Ms. Milburn's request for review, R. at 1-3, making the ALJ's determination the Commissioner's final decision.

---

[2] The application for SSI is dated March 8, 2012.  *See* R. at 170.  The application for DIB is dated March 12, 2012. *See* R. at 180.

[3] "The claimant meets the insured status requirements of the Social Security Act through December 31, 2014."  R. at 13.  *See also* R. at 77, 88, 199, 201, 203, 266.

[4] Ms. Milburn previously filed claims for DIB and SSI on July 29, 2009.  A previous ALJ issued his unfavorable decision on September 19, 2011.  R. at 48-57.  The Appeals Council denied review on February 9, 2012.  R. at 62-64.  Ms. Milburn did not pursue the claims further.  *See* R. at 9.  In the February 20, 2014 decision the ALJ explained why the findings from the previous ALJ decision have *res judicata* effect and are thus binding with respect to the period through the date of that decision, *i.e.,* September 19, 2011.  R. at 9-11.

2. **ALJ's Decision**.

The ALJ evaluated Ms. Milburn's claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920 (2013).  Ms. Milburn bears the burden of demonstrating her disability as to the first four steps.  At step five the burden shifts to the Commissioner.  *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

At step one the ALJ found Ms. Milburn has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date.  R. at 13.  The ALJ concluded at step two that Ms. Milburn has the following severe impairments: degenerative disc disease with associated lumbar post-fusion syndrome, fibromyalgia, anxiety, depression, and obesity.  *Id.*  Also at this step the ALJ determined all other impairments are non-severe.  "The impairments are nonsevere because they have not existed for a continuous period of twelve months, they are responsive to medication, they do not require any significant medical treatment, or they do not result in any continuous exertional or nonexertional functional limitations."  *Id.*

At step three the ALJ found Ms. Milburn does not have an impairment or combination of impairments which meets or medically equals a listed impairment.  The ALJ specifically considered Listings 1.04 (disorders of the spine), 1.06 (fracture of the femur, tibia, pelvis, or one or more of the tarsal bones), 12.04 (affective disorders)[5] and obesity.

> The record does not support degenerative disc disease with associated lumbar post-fusion syndrome nerve root compression characterized by neuro-anatomic distribution of pain with the other symptoms required by Listing 1.04.  There is no evidence of joint dysfunction involving one major peripheral weight-bearing joint, resulting in inability to ambulate effectively, as defined in 1.00B2b.  The record fails to document persistent nonunion or an inability to ambulate effectively within 12 months of the onset date as required by listing 1.06.

---

[5]  The ALJ did not mention by name Listing 12.06 (anxiety related disorders) but it appears from the "paragraph C" criteria that the ALJ considered Listing 12.06.  *See* R. at 15.

Fibromyalgia[,] singularly and in combination, has been compared to all listed impairments.  The undersigned finds that the severity of the claimant's impairment does not meet the specific requirements of any of the impairments listed by the Commissioner in Appendix 1.

Social Security Ruling 02-1p requires Administrative Law Judges to consider obesity in determining whether claimants have medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity.  The Clinical Guidelines issued by The National Institutes of Health define obesity as present in general where there is a body mass index (BMI) of 30.0 or above .  . . The claimant's BMI is 32.0 according to her most recent medical records.

As indicated in Social Security Ruling (SSR) 02-01p, obesity may have an adverse impact upon co-existing impairments.  For example, obesity may affect the cardiovascular and respiratory systems, making it harder for the chest and lungs to expand and imposing a greater burden upon the heart.  Someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone.  In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week, or equivalent schedule.  These considerations have been taken into account in reaching the conclusions herein. Accordingly, the claimant's obesity in the absence of evidence to conclude otherwise does not increase the severity of the claimant's coexisting impairments to the extent that the combination of impairments meets the requirements of a listing.

R. at 13-14 (citations omitted).

In accordance with 20 C.F.R. §§ 404.1520a, 416.920a, the ALJ followed a special technique to evaluate the severity of Ms. Milburn's mental impairment.[6]  The four broad functional areas—(1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation—are known as the "paragraph B" criteria for most of the mental disorders listed in Appendix 1.  In rating the first three functional

---

[6] The ALJ refers to Ms. Milburn's mental *impairment*, specifically discussing Listing 12.04, affective disorders.  *See* R. at 14.

areas the ALJ cited repeatedly the record from a psychological consultative examination. *See* R. at 498-99. The ALJ determined Ms. Milburn has a *mild* restriction in her activities of daily living. The ALJ noted Ms. Milburn regularly cares for her own personal needs, such as dressing and bathing. She shops for groceries, cares for her children, watches television and reads books and newspapers. R. at 14. With regard to social functioning, the ALJ found Ms. Milburn has *mild* difficulties. The ALJ noted Ms. Milburn is respectful and very cooperative, denies any delusional or psychotic abnormalities and has no difficulties relating to her co-workers. *Id.*

As for concentration, persistence, or pace, the ALJ determined Ms. Milburn has *moderate* difficulties. The ALJ noted Ms. Milburn is fully oriented, her concentration and memory are adequate in all areas, she can understand and follow simple instructions independently, her fund of information is normal, her judgment and insight are generally intact, and she is capable of managing her assets. *Id.* Fourth, the ALJ found Ms. Milburn has not experienced any episodes of decompensation. *Id.* Because Ms. Milburn's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied. R. at 15. The ALJ then proceeded to consider the "paragraph C" criteria.

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant does not exhibit a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate. Nor does she demonstrate a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement or resulting in complete inability to function independently outside the area of her home.

*Id.*

Next, the ALJ proceeded to determine Ms. Milburn's residual functional capacity ("RFC").  The ALJ found Ms. Milburn has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a) except,

> the claimant could perform no more than occasional stooping and squatting, but no crawling, climbing, or work at unprotected heights or around dangerous machinery.  The claimant could perform work activities that do not require pushing or pulling with the lower extremities, and she is limited to the performance of only simple and repetitive, nonproduction job tasks.

R. at 15.

At step four the ALJ found Ms. Milburn is unable to perform her past relevant work (administrative assistant, cashier, and fast food cashier) which are all unskilled and light.  R. at 19.  Finally, at step five, the ALJ considered Ms. Milburn's age (32 years old on the alleged disability onset date, defined as a younger individual age 18-44), education (high school; able to communicate in English), past work experience (transferability of job skills is not an issue since Ms. Milburn's past relevant work was unskilled) and her RFC (sedentary work with various limitations).  The ALJ found the Social Security Administration met its burden of proving that Ms. Milburn is capable of performing various other jobs[7] that exist in significant numbers in the national economy, relying on the testimony of the VE.  R. at 20, 42.  Accordingly, the ALJ concluded that Ms. Milburn has not been under a disability, as defined by the Act, from January 1, 2011 through the date of the decision.  R. at 20.

3. **Standard of Review**.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Mascio*, 780 F.3d at 634; *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337,

---

[7] Word processor, office helper, and general information clerk.

340 (4th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.  *Id.*

4. **Discussion.**

Plaintiff claims the ALJ erroneously assessed Ms. Milburn's residual functional capacity in two respects:  (a) failed to include any limitation regarding Ms. Milburn's concentration, persistence, or pace in the RFC assessment and (b) failed to evaluate properly the opinions of Ms. Milburn's treating physician, Robin Medic, M.D.  These issues are addressed below.

A.   *Failing to Incorporate Limitation in Concentration, Persistence, or Pace*

At step three the ALJ determined Ms. Milburn has moderate difficulties in concentration, persistence, or pace.  The ALJ then found Ms. Milburn has the residual functional capacity to perform sedentary work except she has some postural and environmental limitations.  The ALJ further found Ms. Milburn is limited to simple and repetitive, non-production job tasks.  Plaintiff argues the ALJ failed to "explain how a limitation to simple, routine, non-production tasks reflected moderate difficulties in concentration, persistence, or pace."  ECF No. 12-1 at 6.  Under *Mascio* Plaintiff argues the limitation defined by the ALJ is inadequate.

In *Mascio* the Fourth Circuit recognized a difference between the ability to perform simple tasks and the ability to stay on task. The latter ability concerns the broad functional area of concentration, persistence, or pace. *Mascio*, 780 F.3d at 638.

The undersigned finds the limitation, *non-production job tasks*, addresses the ability to stay on task as mandated by *Mascio. See, e.g., Mason v. Comm'r of Soc. Sec. Admin.*, No. SAG-14-3362, 2016 U.S. Dist. LEXIS 5752, at *3 (D. Md. Jan. 19, 2016) ("the claimant can occasionally make simple decisions; she is able to deal with simple routine changes in the work setting; *she is able to perform work that does not require the satisfaction of a production pace*; and she is able to perform low stress work, defined as few changes in the workplace.") (emphasis added); *Chase v. Comm'r of Soc. Sec. Admin.*, No. SAG-14-2961, 2016 U.S. Dist. LEXIS 5283, at *3 (D. Md. Jan. 15, 2016) ("she is mentally limited to simple, routine, and repetitive tasks, in a 'low stress' job (defined as requiring no more than occasional decision making and no more than occasional changes in the work setting), *with no production rate or paced work (such as would be done on an assembly line)*[.]") (emphasis added); *Shirey v. Comm'r of Soc. Sec. Admin.*, No. SAG-15-261, 2015 U.S. Dist. LEXIS 152930, at *2-3 (D. Md. Nov. 10, 2015) ("she is limited to work that is simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks in a work environment *free of fast paced production requirements which is defined as constant activity with work tasks performed sequentially in rapid succession*.") (emphasis added); *Rayman v. Comm'r of Soc. Sec. Admin.*, No. SAG-14-3102, U.S. Dist. LEXIS 150765, at *3 (D. Md. Nov. 6, 2015) ("the claimant is limited to unskilled work; requires a low stress environment, such that there are few changes in the work setting and *no fast-paced or quota production standards*[.]") (emphasis added). Thus, the ALJ did comply with *Mascio*.

B.      *Failing to Evaluate Pertinent Evidence from a Medical Source*

Social Security Ruling ("SSR") 96-2p[8] states in pertinent part, "[w]hen the . . . decision[]
is not fully favorable, e.g., is a denial . . . the notice of the . . . decision *must contain specific
reasons for the weight given to the treating source's medical opinion*, supported by the evidence
in the case record, and must be sufficiently specific to make clear to any subsequent reviewers
the weight the adjudicator gave to the treating source's medical opinion and the reasons for that
weight."  1996 WL 374188, at *5 (Jul. 2, 1996) (emphasis added).  Although the ALJ discussed
the medical opinions, the ALJ failed to assign weight to the opinions of Ms. Milburn's treating
physicians.

As Plaintiff notes, the ALJ provided no insight about his assessment of Dr. Robin
Medic's April 6, 2012 opinion.  Dr. Medic opined, "overall she is unable to do any significant
bending, lifting, prolonged standing, sitting, etc. without significant pain[.]"  R. at 433.  In the
decision the ALJ noted the preceding opinion of Dr. Medic.  "Notwithstanding, it is noted that
the claimant's pain was managed with opioid medications, which kept her comfortable and
allowed her to function."  R. at 16 (citation omitted).  The decision does not indicate the ALJ
considered the six factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c) for *weighing* medical
opinions.  It is clear from the decision that the ALJ did not accord controlling weigh to Dr.
Medic's opinion.  "Adjudicators must remember that a finding that a treating source medical
opinion is not well-supported by medically acceptable clinical and laboratory diagnostic
techniques or is inconsistent with the other substantial evidence in the case record means only
that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.
Treating source medical opinions are still entitled to deference and *must be weighed using all of*

_____

[8] Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions.

*the factors provided in 20 CFR 404.1527 and 416.927.*  SSR 96-2p, 1996 WL 374188, at *4 (Jul. 2, 1996) (emphasis added).

The ALJ discussed but did not assign weight to the opinion from a consultative examiner.

> On May 19, 2012, the claimant was seen by Syed Ahmed, M.D. for a consultative examination.  The claimant was able to lift, carry and handle light objects.  Her hand eye coordination was good. Rapid alternating movements were intact.    There were no disturbances of gross and dexterous movements.  The claimant had no palpable muscle spasms.  There was no atrophy of any muscles. There was no atrophy of the muscles of the hands and the claimant was able to perform both gross and fine manipulations.  Muscle strength was normal . . . The claimant's straight leg raise was negative.  The claimant had an antalgic gait.  She did not have an assistive device.  The claimant was able to squat and rise from that position with difficulty.   She was able to rise from a sitting position without assistance and had some difficulty getting up and down from the exam table.  The claimant was able to walk on her heels and toes with moderate difficulty.   Tandem walking was normal and the claimant could hop on either foot bilaterally.  The claimant dressed and undressed adequately.
>
> It was assessed that the claimant could sit and stand normally in an eight-hour workday and walk 30-60 minutes at a time in an eight-hour workday before requiring a break. Dr. Ahmed said that the claimant could be expected to lift and carry at least 20-30 pounds frequently and 40-60 pounds occasionally.    There were no limitations on bending, stooping, crouching, and squatting.  There were no manipulative limitations on reaching, handling, feeling, grasping and fingering.

R. at 18-19 (citations omitted).  Dr. Ahmed's May 19, 2012 opinion that Ms. Milburn has no limitations as to bending, stooping, crouching and squatting *direct contradicts* and is *inconsistent with* Dr. Medic's April 6, 2012 opinion that Ms. Milburn is "unable to do any significant bending, lifting, prolonged standing, sitting, etc. without significant pain[.]"   R. at 433. Furthermore, the ALJ accorded *great evidentiary weight* to opinion evidence of a State agency medical consultant, *i.e.,* a non-examining physician.  The assignment of *great evidentiary weight* was given "to the extent the claimant is performing some level of work activities, as it is

consistent with the medical record and clinical findings that show no more than moderate symptoms that are stable with conservative treatment." R. at 18.

The ALJ determined Ms. Milburn retains the residual functional capacity to perform *sedentary work*, which is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.927(a). However, the State agency medical consultant, whose opinion was accorded *great evidentiary weight*, assessed Ms. Milburn's credibility as follows:

> Allegations of limited lifting to less than 10 pounds is not consistent with the findings of normal strength. Alleges difficulty with protracted walking because of pain. The allegation is credible and in consideration of pain, medical evidence supports restricting protracted walking to a total of 2-4 hrs each day.

R. at 106. The opinion with regard to lifting appears based on Dr. Ahmed's May 19, 2012 consultative examination.

It is unclear to the undersigned why the ALJ rejected Dr. Ahmed's opinion and the State agency medical consultant's opinion that Ms. Milburn has normal strength, meaning she can lift 20-30 pounds frequently and 40-60 pounds occasionally. The lifting restriction appears more consistent with Dr. Medic's opinion. By not assigning weight to the opinions of Dr. Medic and Dr. Ahmed and explaining the reasons for assigning such weight, it is not clear to the undersigned how and why the ALJ evaluated their opinions in contrast to the *great evidentiary weight* assigned to the opinion of the State agency medical consultant.

There is another inherent inconsistency by the ALJ. In the decision he wrote,

> In May 2012, the claimant underwent a Comprehensive Mental Status on a consultative basis. She was very cooperative, and respectful without resistance or refusal. It was assessed that the claimant has the ability to understand and follow simple instructions independently. This opinion is *afforded little*

11

> *evidentiary weight*, as the examiner did not consider the claimant's
> subjective pain complaints.

R. at 19 (citations omitted) (emphasis added).  The Comprehensive Mental Status consultative

examination was conducted by James W. Nutter, Ed. D., Licensed Clinical Psychologist.  *See* R.

at 498-99.

The undersigned is perplexed by the ALJ assigning *little evidentiary weight* in light of the

ALJ **solely** relying on this opinion to rate Ms. Milburn's four broad functional areas.  *See* R. at

14.  Every source cited in support of what Ms. Milburn can do is based on Dr. Nutter's

consultative examination.  Because the ALJ assigned *little evidentiary weight* to Dr. Nutter's

opinion, the undersigned finds it was inappropriate to rely exclusively on Dr. Nutter's opinion to

evaluate the severity of Ms. Milburn's mental impairments.

Since Dr. Nutter's opinion carries little evidentiary weight, the ALJ must reassess and

rate Ms. Milburn's four broad functional areas.  In contrast to Dr. Nutter's opinion concerning

Ms. Milburn's activities of daily living, her testimony revealed limitations.

> Q      All right.  Ms. Milburn, I was asking do you – — are you
> able to shop for things that you need such as food and other things?
>
> A      Sometimes I go to the grocery store with my aunt, or I give
> her the list.  She drives me back and forth to appointments, so I
> give her a list, and she'll get the stuff that I need from the store.
>
> *                          *                          *
>
> Q      How about dressing and bathing?  Can you do that?
>
> A      I can put on my top part, but I need help with my lower
> part.

R. at 35, 36.  In completing the Function Report - Adult, Ms. Milburn did **not** check that she had

**no problem** with personal care.  In terms of dressing, she disclosed her daughters place her

socks and shoes on and assist her with putting on her pants.  R. at 239.  She cannot sit in the bath

tub anymore so she has to sit in the shower using a medical shower chair.  R. at 239, 259.  She has purchased a toilet seat riser because the normal height of the toilet is too low and if she tries to sit down on the normal height toilet seat, her legs become numb and she experiences back pain.  *Id.*  Her uncle does yard work for her; housework such as sweeping and washing dishes is handled by her older daughters.  R. at 241.

Ms. Milburn received treatment at Walden Behavioral Health from April 18, 2013 through December 5, 2013.  R. at 570-603.  The ALJ discussed this medical evidence but did not assign a weight to this medical source's opinions.  He discounted the Global Assessment of Functioning ("GAF") ratings of 45 as inconsistent with mental status findings.  "Treatment records do not reflect serious impairment in social, occupational, or school functioning, as is indicative of her average GAF ratings.  Mental status examinations were generally unremarkable for significant findings."  R. at 17.  The undersigned infers the ALJ assigned little evidentiary weight to the opinions expressed.

If both Dr. Nutter's opinion and the opinions expressed by Walden Behavioral Health are assigned little evidentiary weight, the ALJ must explain on what basis he rated Ms. Milburn's four broad functional areas.  Finally, as a reminder, the ALJ specifically found Ms. Milburn's has two severe mental impairments:  depression and anxiety.  *See* R. at 13.  In applying the special technique, the ALJ specifically considered listing 12.04 and referred to Ms. Milburn's mental *impairment*.  The ALJ must also specifically address Ms. Milburn's anxiety (listing 12.06).

5. **<u>Conclusion</u>**.

      Substantial evidence does not support the decision that Plaintiff is not disabled.  Accordingly, the

Plaintiff's alternative request for remand will be granted and Defendant's Motion for Summary Judgment

will be denied.

Date: <u>May 31, 2016</u>                          _____/s/_____

                                           WILLIAM CONNELLY
                               UNITED STATES MAGISTRATE JUDGE